Good morning, your honors. May it please the court. The district court abused its discretion when it excluded an official report of investigation by Deputy Inspector General John Ryan into allegations of misconduct that Mr. Pedraza's subordinates have made against him. The report, which documented an investigation that occurred in the week after the allegations surfaced, exonerated Mr. Pedraza, or Agent Pedraza, and concluded that the allegations against him were the result of a misunderstanding, not deliberate wrongdoing. The report corroborated Mr. Pedraza's investigative reports, like the one at issue, of public agencies, are presumptively admissible unless the party opposing their admission demonstrates a lack of trustworthiness. Here, the government did not even attempt to make such a showing of lack of trustworthiness at trial. The report should have been admitted, and its exclusion prejudiced Agent Pedraza. I'd like to address the government's two main arguments against admission of the Ryan report. These are that Inspector Ryan lacked legal authority to conduct the investigation, and that the report was untrustworthy because Inspector Ryan had motivational problems or motivational authority. Inspector Ryan, as a high-ranking law enforcement agent in the Department of Homeland Security, Office of the Inspector General, had not only the authority to conduct the investigation, but as a sworn law enforcement agent, he had the duty to conduct the investigation into wrongdoing by a fellow DHS OIG agent. This authority was conferred upon him by Section 4A of the Inspector General Act. That section gives the Office of the Inspector General the authority to conduct audits and investigations into fraud and misconduct by employees of DHS, including other Office of the Inspector General employees. Ryan wasn't part of the actual inspection team that visited McAllen. Your Honor, he was the supervisor of that office. He was Inspector Izzard's supervisor. Inspector Izzard was the agent who conducted the inspection team. So this was clearly within his bailiwick and within his authority. My question was, he wasn't part of the actual inspection team that visited McAllen, is that right? No, Your Honor, he was not part of the inspection team, but he did conduct this investigation as part of his duty to supervise inspections, and it was his authority to supervise this inspection. I also want to point out that the government, I think, tries to portray Inspector Ryan's sort of a frolic, as something he did on his own. Well, the fact is that the report was placed in the files of the investigation. It was signed on official DHS stationery. It was placed in the files of the investigation. And Inspector Ryan did not conduct the investigation on his own. In fact, the report makes clear that at least when he interviewed Agent Pedraza, he was assisted by his assistant Deputy Inspector General Wayne Salzgeber. So this was not something that Ryan just kind of went off and did on his own. It was part of his job in supervising the inspection and part of his duties as a law enforcement agency to respond to serious allegations of misconduct on the part of another DHS OIG agent. So he did have authority to conduct the investigation. The authority was conferred on him by the Inspector General's Act. I also want to address the government's second argument on appeal. And notice I say on appeal because this argument was not presented at trial, which is that the report was untrustworthy. Now, keep in mind, it's the government's burden to demonstrate untrustworthiness. Public reports, public investigative reports are presumptively admissible. And it's only when the government carries its burden to show untrustworthiness that they should be excluded. And that presumption of admissibility, by the way, applies not only to the facts set forth in the report, but also to the observations and conclusions in the report, which of course were important in this case. And the jury should have been able to hear those. But regarding trustworthiness, first, the government didn't even raise it at trial. And second, I want to address this issue that Agent Ryan was putting out the report as part of a cover-up. There is not one shred of evidence in the record that Agent Ryan had improper motivations or was putting this report out to cover up for, to make himself look good or to cover up for Mr. Pedraza. The government, all the government could say is, we are investigating, Inspector Ryan. Well, the government investigates a lot of people, many of whom are ultimately concluded to have done nothing wrong. And to this day, they have not indicted or otherwise taken criminal action against Inspector Ryan. Now they also point to the fact that Inspector Ryan took the fifth when the defense subpoenaed him to testify at trial. Well, Your Honors, I represent a lot of people in investigations and anybody who is sophisticated, and Inspector Ryan certainly was, is going to lawyer up, find counsel, and counsel is going to tell them to assert his Fifth Amendment rights unless there's some benefit to the agent. But bottom line, there is no evidence whatsoever that Agent Ryan was in any way compromised in his investigation. In fact, the district court asked in July of 2014, after Mr. Pedraza's conviction, the district court asked for information about the investigation into Inspector Ryan and the government responded by saying, Your Honor, respectfully, we don't have to provide you with that investigation or information about that investigation because of separation of powers concerns. If this was an error, why wasn't it just harmless error? Why wasn't this just cumulative evidence? Your Honor, I don't think it was cumulative. I think the fact that a supervisory agent in DHS investigated this immediately after the allegations against Mr. Pedraza surfaced, before the agents had time to be offered immunity or given promises that they, or, you know, told that they may be able to retain their jobs if they testified in a way that the government considered to be truthful, before they had the opportunity to shape their stories, the fact that this investigation was conducted then by a senior DHS OIG official and there was no wrongdoing concluded, I think that is something that would have had a substantial impact on the jury's verdict. But as a matter of custom and practice, DHS OIG inspectors normally did not inspect other inspectors. Isn't that right? Well, actually, Your Honor, that's not correct. I mean, that's the whole purpose of the inspection and the office that Inspector Ryan oversaw was to inspect the operations and the procedures of the McAllen Field Office. So DHS OIG has authority to investigate allegations of wrongdoing by any employee of DHS, including their own people in the OIG office. So that would be routine, that that's how an investigation would unfold. A DHS inspector within the office would investigate somebody in the same office. They certainly have that authority, Your Honor. I'm not sure I would characterize it as routine, but these inspections, the inspection of the McAllen Field Office that these allegations grew out of was a routine inspection. They occurred every year and it was basically an open book test. The offices would be told, here's the files we're going to look at, have them ready for us to investigate. And that's what Inspector Ryan's investigation grew out of was this routine inspection by his office, the office that coordinated inspections. And at the time of Ryan's investigation, Ryan was aware that he was being mentioned as being under investigation as well. Is that right? At the time of Ryan's investigation? No. No. I think at that point... Pedraza, well Pedraza thought he was being mentioned as under investigation, didn't he? Well, I don't think, Pedraza had, allegations against Pedraza had surfaced. That was all Pedraza knew. And then Ryan conducted this investigation after those allegations surfaced to Agent Robert Izzard, who was the agent responsible for conducting the inspection, the routine inspection of the McAllen Field Office. So at the time, there was no investigation of Ryan. Ryan had no reason to suspect that he was going to be under investigation for Pedraza's wrongdoing. I mean, his investigation occurred the week after the agents first made any kind of allegations against Pedraza. But back to the harm questions, Your Honor. That's a good question. But I do think that having... I do think that a report by a senior DHS OIG official in the time immediately after the allegations surfaced, before witnesses were able to shape their stories, would have had a substantial impact on the verdict. And that's something the jury should have heard. Now I want to address this other issue. Well how is... there was a final DHS OIG report which got admitted into evidence. There was. There was a final DHS OIG report that was admitted into evidence. It did not mention any wrongdoing on the part of Pedraza. But it didn't address the allegations against him. It simply said that, you know, it talked about deficiencies in the office's procedures, policies and procedures, but nothing of a criminal nature. But overall, it was positive in its review of the DHS OIG McAllen office. Yet you maintain that the Ryan report would have been significant. I do, Your Honor, because it specifically addressed the allegations of deliberate wrongdoing against Agent Pedraza. The inspection report was silent on those. It didn't say anything about those. You know, Your Honor spoke about cumulative evidence. The report was not cumulative. I mean, it gave... it was the only evidence of Inspector Ryan's investigation. So I do think that it would have made a difference to the verdict, and that it did affect Inspector Pedraza's substantial rights. I also want to address this argument that the report should have been excluded because it usurped the jury's fact-finding role. Congress, when it passed Rule 8038A.3, expressly allowed juries to hear the conclusions of investigative reports. Beach Aircraft reaffirmed that. This Court in Moss reaffirmed that and said that conclusions and admissions are admissible. If there is a concern about whether the... hearing the conclusions and admissions of the investigative agency will usurp the jury's fact-finding authority, the jury should be instructed that it is the sole... that can be cured by instructing the jury that it is the sole determiner of fact, the sole finder of fact. That's in the Fifth Circuit Pattern Jury Instruction. So I don't think that... I think that the district court's concern that providing the jury with the Ryan report would usurp their fact-finding authority is misplaced, and I think Moss makes that very clear. The government also argues that the report should have been excluded under Rule 403. Your Honors, I also think that that is a red herring. Rule 403 doesn't apply here. The Court didn't make any specific findings as to either prejudice or as to the probative value of the report, unlike the O'Keefe case where Judge Berrigan made a specific finding as to jury confusion and prejudice. So I don't think Rule 403 applies here, and Moss specifically says that Rule 403 should not be applied in a way that guts the holding of beach aircraft or that guts Rule 803's provision that the jury should get to hear the conclusions and findings of the report. Your Honors, in the brief time I have left, I'd like to address the 1519 issue. Real quickly, I understand Yates is not on all fours, but Yates does speak to two important principles. First is that 1519 is not a general spoliation of evidence statute, and second, that 1519 should be interpreted in light of both the harsh penalties that it provides and in light of its position as part of the Sarbanes-Oxley Act. It is our position, Your Honor, that Yates, or that Section 1519, only applies to activities affecting the agency's law enforcement activities and not to an agency's internal processes or inspections. And with that, I see my time has almost concluded, and I'll reserve the rest for rebuttal. Mr. Isaac, thank you. Ms. Heller? Good morning. May it please the Court, I'm Kirby Heller for the United States. There are two important points I want to bring out about the circumstances of the Court's ruling on the admission of Mr. Ryan's report. First, this took place on the first day of trial. Now, by that time, the District Court was quite familiar with the Ryan report. It had asked for and reviewed the grand jury transcripts, which was not just there for the government's allegation we were investing in Ryan of wrongdoing, but the Court actually had the grand jury testimony that could support the government's suspicion. In particular, Agent Izzard, I mean, Agent Izzard discussed how he was shut out of this whole process, and he discussed other ways in which this did not follow the normal course of events. In addition, of course, the District Court had had a lengthy James hearing when both Agent Faragas and Agent Izzard had testified again about their interactions with Ryan. Of course, the Court also knew that Ryan was going to, was not going to testify as a defense witness because he was asserting his Fifth Amendment privilege, which, of course, he's entitled to do. So those were the circumstances that the Court knew at the time that this report was offered into evidence. It also could just look at this report and see that it didn't look like any other investigative reports that were part of this case. The other important point, probably informed by the first, was that this was an argument about pre-admission. So the Court had exactly the same question that Your Honor had. What was Ryan's authority in this circumstance? Did he have the authority to investigate these allegations against Mr. Pedraza? And he just wanted an answer. He didn't say he didn't. He said, you're going to have to prove it up to me. And there was no response, except for the response, he's a higher up in the office, and of course the office has the authority to do this, and we don't contest that. But was this a report of the office, or was this some separate report? And the Court wanted the answer to that, and that was never, in the Court's word, proved up. And on that basis alone, can't say that the District Court abused its discretion when it didn't get an answer to its fundamental, foundational question. It also didn't get answers to the other questions, which were, we have hearsay within, the whole report practically is hearsay within hearsay. We have a little paragraph on the review of the reports of the two files. Those don't say very much, one way or the other. A long paragraph about the interview with Mr. Pedraza, all of which would be excluded. Another paragraph about the interview with unnamed agents who made the allegations. We don't know who those are, but that would be excluded. And then a simple paragraph at the end that said, based on all of this, I believe there was a misunderstanding, there was a lot of stress before the inspection. And again, Pedraza at the time didn't say, well, we'll take out the hearsay within hearsay, this is what we'll admit. None of that happened. It didn't, again, in the Court's words, prove it up. And the same thing as to the ultimate fact issue, which was the third question the Court had, this is my concern, how are we going to deal with that? For any one of those three reasons, the Court did not abuse its discretion in not pre-admitting the exhibit, which is all that was before it at the time. So it's no surprise that the government didn't argue about trustworthiness, because it had already prevailed on this initial, on the Court's initial ruling, which was, I'm not admitting it right now unless you tell me more. And similarly, the Court didn't really need to go to 403, because it hadn't made a final ruling. It certainly suggested that it would keep it out under Rule 403. I think its statement about, what concerns me is that this is the same question the jury is ultimately going to have to reach. It had also said previously, not long before this, that, in no uncertain terms, I'm not trying what happened in Washington. This trial is about what happened in Texas. It's not about what Mr. Ryan might have done in Washington. Certainly, if the report had come in, the trial would have been what Mr. Ryan did in Washington, as well as what Mr. Pedraza did in Texas. So for all those reasons, the District Court did not abuse its discretion in keeping, on this record, keeping the exhibit out. As to the second point about 1519, I think the meaning of 1519 is very clear. This is not, Yates does not address the issue of what it means to say that a matter is within the jurisdiction of any department or agency. The claim only pertains to whether the inspection was a matter within the jurisdiction of the Department of Homeland Security. Clearly, it was. The plain text of the statute clearly covers it. The legislative history confirms it, and I think there's really no question that the investigation of the office is a matter within the jurisdiction of the department or agency. If there are no questions, we'll rest on our brief. Thank you, Ms. Heller. Mr. Pedraza, you save time for rebuttal. First of all, regarding the issue of authority, the defense did brief that. When we moved for pre-admission of, I believe it was Exhibit 17, which was the Ryan report, we cited the Inspector General Act, just as we have below. So to say that the, it's, I think, incorrect to say that the defense did not respond to the judge's questions about authority. The second issue is hearsay within hearsay. The report did contain hearsay within hearsay. That does not mean that the entire report should be excluded. In fact, I don't know how to say the name of this case, but they cited it. It's Mahat, I think. It says exactly that. It's a report, it's a case that the government cites. So the fact that there was hearsay within hearsay in the report does not mean that the entire report is excluded. In fact, I think there's a couple ways to handle that. The first way would be to redact hearsay within hearsay. But another way might be to adopt the approach under Rule 703 for expert witnesses, which, when the expert relies on inadmissible evidence, the jury is allowed to hear it if it's aid in helping the jury evaluate the expert's report substantially outweighs the prejudicial value of the inadmissible evidence. So the jury may have been allowed to see the hearsay within hearsay so that it could evaluate Ryan's conclusions. Third, I want to say just one more thing about harm. I think that the evidence, the harm is especially grave in this case because the evidence was close. In fact, these agents who testified that they had engaged in this wrongdoing with Mr. Pedraza did so under promises of immunity and did so with the hope that they would get their jobs back. And they ultimately did give their jobs back, which I think to me shows how close the evidence was here. If the conduct that is at issue is so egregious, why were these agents who testified that they had engaged in this wrongdoing with Mr. Pedraza given their jobs back and allowed to remain as agents in the Department of Homeland Security? So I think that the evidence was close. The Ryan report should have been admitted, and its exclusion was harmful to them. Thank you, Your Honor. All right. Thank you, Mr. Isaac. Your case is under submission.